**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FLASHOVER MAINTENANCE LLC, | ) | CASE NO. 1:26-CV-01850-DAR |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| vs. | ) | |
| CBRE, INC., *et. al*, | ) | |
| Defendants. | ) | |

**ANSWER OF DEFENDANTS CBRE, INC., CBRE GROUP, INC., AND FACILITYSOURCE, LLC AND COUNTERCLAIM OF FACILITYSOURCE, LLC**

For their answer to Flashover Maintenance LLC's ("Flashover") Complaint, Defendants CBRE, Inc. ("CBRE"), CBRE Group, Inc. ("CBRE Group"), and FacilitySource, LLC ("FacilitySource") (collectively, "Defendants") state as follows:

**Parties**[1]

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and therefore, deny same.

2. FacilitySource admits the truth of the allegations contained in paragraph 2 of the Complaint.

3. In response to paragraph 3 of the Complaint, CBRE admits only that it is a Delaware corporation with its principal place of business in Dallas, Texas, and that its

[1] Headings and subheadings used in this Answer are intended to mirror the Complaint. In using these headings and subheadings, Defendants do not admit or adopt the accuracy of the headings and subheadings.

parent is CBRE Group, Inc. CBRE, Inc. denies the truth of the remaining allegations of paragraph 3.

4. In response to paragraph 4 of the Complaint, CBRE Group admits only that it is a Delaware corporation headquartered in Dallas, Texas, and that it is a holding company with no operations. The remainder of paragraph 4 contains no allegations to which any response is required. To the extent any response is required, such allegations are denied.

5. In response to paragraph 5 of the Complaint, CBRE admits only that CBRE, Inc. acquired FacilitySource in or around June 2018 and that FacilitySource is a limited liability company whose sole member is Facility Source Holdings, LLC, which has two members: FS WP Holdco, Inc. and CBRE, Inc. CBRE further admits that a press release regarding the acquisition was issued on June 12, 2018, and that the press release speaks for itself. Defendants deny the truth of any remaining allegations of paragraph 5.

6. In response to the allegations in paragraph 6 of the Complaint, Defendants admit only that, after the acquisition, employees of FacilitySource were assigned email addresses with an extension of @cbre.com and that the signature block for some of those employees included references to CBRE | Global Workplace Solutions. Defendants state that the terms of any supplements and statements of work to the Service Provider Agreement speak for themselves. Defendants deny the truth of the remaining allegations in paragraph 6 of the Complaint and specifically deny that CBRE Group or CBRE contracted with Flashover.

7. Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations contained in that paragraph.

## Jurisdiction and Venue

8. Paragraph 8 contains legal conclusions to which no response is required. Defendants further respond that subject-matter jurisdiction after removal is now governed by federal law. Defendants deny that Plaintiff is entitled to any money damages.

9. Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations contained in that paragraph.

10. Paragraph 10 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations contained in that paragraph.

## General Allegations

### A. The Agreement

11. In response to paragraph 11, FacilitySource admits only that FacilitySource and Flashover entered into a Service Provider Agreement dated February 26, 2018, and that the Agreement is marked proprietary and confidential. Defendants deny the allegations of paragraph 11 to the extent they are inconsistent with the Service Provider Agreement.

12. Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations contained in that paragraph.

13. In response to paragraph 13 of the Complaint, FacilitySource admits only that there were additional scopes of work and schedules between FacilitySource and Flashover pursuant to the Service Provider Agreement, and that those documents speak

for themselves. Defendants deny the allegations of paragraph 13 to the extent they are inconsistent with those agreements or attempt to characterize CBRE or CBRE Group as a party to those agreements. The remainder of paragraph 13 contains allegations to which no response is required, and to the extent any response is required, such allegations are denied.

14. In response to the allegations in paragraph 14 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 14 to the extent they are inconsistent with the Service Provider Agreement and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement or that they agreed to pay Flashover for any services Flashover performed.

15. In response to the allegations in paragraph 15 of the Complaint, FacilitySource admits that Flashover performed certain work orders under the Service Provider Agreement, but that Flashover's services were not always performed in accordance with the terms of the Service Provider Agreement and that Flashover's services at specific locations were terminated. Defendants deny the remaining allegations of paragraph 15. Specifically, CBRE and CBRE Group deny they were parties to the Service Provider Agreement, or any of its supplements, or that they agreed to pay Flashover for any services Flashover performed.

**B. The Landscaping and Grounds-Maintenance Services**

16. In response to the allegations in paragraph 16 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 16 to the extent they are inconsistent with those documents and specifically

deny that CBRE and CBRE Group were parties to the Service Provider Agreement, or agreed to pay Flashover for any services Flashover performed.

17. In response to the allegations in paragraph 17 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 17 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement, or agreed to pay Flashover for any services Flashover performed.

18. In response to the allegations in paragraph 18 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 18 to the extent they are inconsistent with those documents. Specifically, CBRE and CBRE Group deny they were parties to the Service Provider Agreement, or any of its written scope-of-work documents, or that they agreed to pay Flashover for any services Flashover performed.

19. In response to the allegations in paragraph 19 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 19 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement, or agreed to pay Flashover for any services Flashover performed.

## C. The Snow and Ice Removal Services

20. In response to the allegations in paragraph 20 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any

additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 20 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement or any written scope-of-work documents, or agreed to pay Flashover for any services Flashover performed.

21. In response to the allegations in paragraph 21 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 21 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement, or agreed to pay Flashover for any services Flashover performed.

22. In response to the allegations in paragraph 22 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any additional scopes of work speak for themselves. Defendants deny the allegations in paragraph 22 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement, or agreed to pay Flashover for any services Flashover performed.

**D. The Service Locations**

23. In response to the allegations in paragraph 23 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 23 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider

Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

24. In response to the allegations in paragraph 24 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 24 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

25. In response to the allegations in paragraph 25 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 25 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

26. In response to the allegations in paragraph 26 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 26 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

27. In response to the allegations in paragraph 27 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 27 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

28. In response to the allegations in paragraph 28 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 28 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

29. Paragraph 29 is not directed at Defendants, so no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore deny same.

30. In response to the allegations in paragraph 30 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 30 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider

Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement or any written scope-of-work documents.

31. In response to paragraph 31 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any scopes of work speak for themselves. Defendants deny the allegations in paragraph 31 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement or any written scope-of-work documents.

32. In response to the allegations in paragraph 32 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any scopes of work speak for themselves. Defendants deny the allegations in paragraph 32 to the extent they are inconsistent with those documents, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement or any written scope-of-work documents.

33. In response to the allegations in paragraph 33 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 33 to the extent they are inconsistent with the Service Provider Agreement. FacilitySource admits that Flashover was paid for the work referenced in paragraph 33. CBRE and CBRE Group deny they were parties to the Service Provider Agreement, or that they paid Flashover for any worked performed under that agreement.

34. In response to the allegations in paragraph 34 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves and deny the allegations in paragraph 34 to the extent they are inconsistent with the Service Provider Agreement. FacilitySource admits that Flashover was paid for the work referenced in paragraph 34. CBRE and CBRE Group deny they were parties to the Service Provider Agreement, or that they paid Flashover for any worked performed under that agreement.

35. In response to the allegations in paragraph 35 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 35 to the extent they are inconsistent with the Service Provider Agreement. FacilitySource admits that Flashover was paid for the work referenced in paragraph 35. CBRE and CBRE Group deny they were parties to the Service Provider Agreement, or that they paid Flashover for any worked performed under that agreement.

36. In response to the allegations in paragraph 36 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 36 to the extent they are inconsistent with the Service Provider Agreement. FacilitySource admits that Flashover was paid for the work referenced in paragraph 36. CBRE and CBRE Group deny they were parties to the Service Provider Agreement, or that they paid Flashover for any worked performed under that agreement.

37. In response to the allegations in paragraph 37 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 37 to the extent they are

inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group deny they were parties to the Service Provider Agreement.

38. In response to the allegations in paragraph 38 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 38 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group deny they were parties to the Service Provider Agreement.

39. Paragraph 39 is not directed at Defendants, so no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore deny same.

40. In response to the allegations in paragraph 40 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 40 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group deny they were parties to the Service Provider Agreement.

41. In response to the allegations in paragraph 41 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement and any AT&T

service location supplement speak for themselves. Defendants deny the allegations in paragraph 41 to the extent they are inconsistent with those documents and specifically deny that CBRE or CBRE Group were parties to the Service Provider Agreement or that they agreed to pay Flashover for any services Flashover performed.

42. In response to the allegations in paragraph 42 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 42 to the extent they are inconsistent with the Service Provider Agreement, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group further deny they were parties to the Service Provider Agreement.

**E. Flashover's Performance**

43. Defendants deny the truth of the allegations contained in paragraph 43 of the Complaint.

44. FacilitySource admits that Flashover checked in and checked out on fsElite but denies that Flashover accurately recorded its services in fsElite. Defendants deny the truth of the remaining allegations of that paragraph. CBRE and CBRE Group deny they were parties to the Service Provider Agreement or that Flashover reported or verified any work to them.

45. Defendants deny the truth of the allegations contained in paragraph 45 of the Complaint.

46. Defendants deny the truth of the allegations contained in paragraph 46 of the Complaint.

47. Defendants deny the truth of the allegations contained in paragraph 47 of the Complaint.

**F. Defendants' Failure to Pay**

48. In response to paragraph 48, FacilitySource admits that it has not paid certain invoices submitted by Flashover in whole or in part, but states that the nonpayment was justified under the terms of the Service Provider Agreement and/or any supplement or work orders. Defendants deny the truth of any remaining allegations in paragraph 48 and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed.

49. In response to paragraph 49, FacilitySource admits only that some amount of the alleged invoices remains unpaid to Flashover, but states that the non-payment was justified under the terms of the Service Provider Agreement and/or any supplement or work orders. Defendants deny the truth of the remaining allegations of paragraph 49 and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed.

50. In response to paragraph 50, FacilitySource admits only that some amount of the alleged invoices remains unpaid to Flashover, but states that the non-payment was justified under the terms of the Service Provider Agreement and any supplement or work orders. Further, based upon information provided by Flashover, it appears that over $1 million of the amount Flashover claims is unpaid is for alleged services performed at sites in Ohio, but denies that any amounts are required to be paid under the Service Provider Agreement for such invoices. Defendants deny the truth of the remaining allegations of paragraph 50 and specifically deny that CBRE or CBRE Group are parties

to the Service Provider Agreement, or agreed to pay Flashover for any services Flashover performed.

51. In response to paragraph 51, FacilitySource admits only that at least some of the disputed work occurred in 2023 and 2024. Defendants deny the truth of the remaining allegations of paragraph 51 and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed.

52. Defendants deny the truth of the allegations contained in paragraph 52.

53. Defendants deny the truth of the allegations contained in paragraph 53.

54. In response to paragraph 54, FacilitySource states that any communications between FacilitySource and Flashover speak for themselves. Defendants deny the truth of the allegations in paragraph 54 to the extent they are inconsistent with those communications and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed.

## G. Conditions Precedent

55. Paragraph 55 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of paragraph 55 and specifically deny that CBRE and CBRE Group were obligated to pay Flashover any amounts.

56. In response to the allegations in paragraph 56 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations in paragraph 56 to the extent they are inconsistent with the Service Provider Agreement and specifically deny that CBRE and CBRE Group are parties to the Service Provider Agreement.

57. In response to paragraph 57, FacilitySource admits only that Flashover and FacilitySource had several communications regarding this dispute and that they met via Teams in January 2025 to further discuss. Defendants deny the truth of the remaining allegations of paragraph 57 and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed.

58. In response to paragraph 58, FacilitySource admits only that the dispute between Flashover and FacilitySource has not resolved but denies that any further amounts are owed to Flashover. Defendants deny the truth of any remaining allegations of paragraph 58 and specifically deny that CBRE or CBRE Group agreed to pay Flashover for any services Flashover performed.

59. Paragraph 59 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of that paragraph.

**Claim for Breach of Contract**
**(Against All Defendants)**

60. Defendants incorporate their responses to paragraphs 1 through 59 of the Complaint as if fully repeated here.

61. FacilitySource admits that the Service Provider Agreement is a valid and enforceable contract. As to any supplements, written Service Location and Pricing supplements and scope-of-work documents, Flashover has not specifically identified those documents in its Complaint, so FacilitySource is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the allegations related to them. CBRE and CBRE Group deny that

they are bound by the Service Provider Agreement or any supplements or scope-of-work documents.

62. In response to Paragraph 62, FacilitySource admits that it is a party to the Service Provider Agreement. The remaining allegations of Paragraph 62 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of that paragraph and specifically deny that CBRE or CBRE Group are bound by the terms of the Service Provider Agreement.

63. Paragraph 63 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of that paragraph, and FacilitySource specifically denies that Flashover performed in accordance with the terms of the Service Provider Agreement. CBRE and CBRE Group specifically deny that they are bound by the terms of the Service Provider Agreement.

64. Paragraph 64 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of that paragraph.

65. Paragraph 65 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of that paragraph, and FacilitySource specifically denies that Flashover performed under the terms of the Service Provider Agreement or that FacilitySource breached that agreement. CBRE and CBRE Group specifically deny that they are bound by the terms of the Service Provider Agreement.

66. Paragraph 66 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the truth of the allegations of that paragraph.

67. In response to paragraph 67 of the Complaint, FacilitySource states that the terms of the Service Provider Agreement speak for themselves. Defendants deny the allegations of paragraph 67 to the extent they are inconsistent with the Service Provider Agreement and specifically deny that Flashover is entitled to any recovery, including recovery of its attorneys' fees and costs. CBRE and CBRE Group specifically deny that they are bound by the terms of the Service Provider Agreement.

68. Defendants deny every allegation not expressly admitted as true and deny that Flashover is entitled to any of the relief it requested, or any other relief.

**AFFIRMATIVE DEFENSES**

1. Flashover fails to state a claim upon which relief can be granted.

2. Flashover fails to state a claim upon which relief can be granted against CBRE Group, which is a holding company with no operations.

3. This Court lacks personal jurisdiction over one or more of the defendants, including CBRE Group, which has no operations and no activity in Ohio.

4. Flashover's claim is barred by the failure of a condition precedent.

5. Flashover's claim is barred by its failure to comply with the terms of the Service Provider Agreement.

6. Flashover's purported damages were caused, in whole or in part, by its own conduct, actions, omissions, delay, or failure to act.

7. Flashover failed to mitigate its damages.

8. Flashover's claim is barred by the doctrine of accord and satisfaction.

9. Flashover's claim is barred by the doctrines of estoppel, waiver, laches, and/or unclean hands.

10. Flashover's claim is barred in whole or in part by the doctrines of payment and release.

11. Flashover's claim against CBRE and CBRE Group are barred because Flashover failed to plead facts sufficient to support piercing the corporate veil.

12. Defendants reserve the right to assert additional affirmative defenses as the facts and circumstances of Flashover's claim become known through further investigation and discovery.

**WHEREFORE**, Defendants respectfully request that Flashover's Complaint be dismissed with prejudice, with all costs taxed to Flashover, and that Defendants be awarded their reasonable attorneys' fees and expenses.

## COUNTERCLAIM

For its counterclaim against Plaintiff/Counterclaim Defendant Flashover Maintenance LLC ("Flashover"), Defendant/Counterclaim Plaintiff FacilitySource, LLC ("FacilitySource") alleges as follows:

### I. Nature of the Action

1. FacilitySource and Flashover entered into a Service Provider Agreement ("Agreement") that provided, among other things, that Flashover a) must perform satisfactory services in accordance with generally accepted professional standards and in the most expeditious, economical, and competent manner consistent with the best interests of FacilitySource and its customer(s), and b) must not subcontract or assign the Services to be performed under the Agreement without the prior written consent of FacilitySource.

2. Despite these requirements, Flashover subcontracted numerous services performed under the Agreement to various third-party providers without seeking or obtaining the written consent of FacilitySource, in violation of the Agreement.

3. Moreover, Flashover did not perform the services in the most expeditious, economical, and competent manner and in FacilitySource's and its customers' best interests. Instead, Flashover took the opportunity to over-bill FacilitySource for frivolous and unnecessary work, and the work it did perform was unsatisfactory.

4. In this action, FacilitySource seeks damages from Flashover for its breaches of the Agreement.

## II. The Parties

5. FacilitySource is a Delaware limited liability company. Its sole member is FacilitySource Holdings, LLC, which has two members: FS WP Holdco, Inc. and CBRE, Inc. CBRE, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. FS WP Holdco, Inc. is a Delaware corporation headquartered in Arizona.

6. As alleged in the Complaint, and upon information and belief, Flashover is an Ohio limited liability company with its principal place of business in Richland County, Ohio.

## III. Jurisdiction and Venue

7. The Court has jurisdiction over this action under 28 U.S.C. § 1332, because Flashover and FacilitySource are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court also has supplemental jurisdiction over all other claims forming the same case and controversy per 28 U.S.C. § 1367(a).

9. Venue in this Court is also proper under 28 U.S.C. § 1391(b)(1) and (2) because Flashover resides in this District and a substantial part of the events giving rise to this counterclaim occurred in this District.

## IV. Background Facts

### A. The Agreement

10. On February 26, 2018, Flashover and FacilitySource entered into the Agreement. A true and accurate copy of the Agreement is attached as Exhibit 1.

11. Under the terms of the Agreement, Flashover agreed to provide facility maintenance and repair services for FacilitySource's customers. (Ex. 1, p. 1.)

12. In the Agreement, Flashover agreed that its services shall be performed to the reasonable satisfaction of FacilitySource's customer. (*Id.* § 1(a)(ii).)

13. Flashover also agreed that its Services shall "be of first class professional and technical quality, consistent with generally accepted standards of the applicable industry and suitable for use as contemplated by" FacilitySource. (*Id.* § 1(a)(iv).)

14. Section 1(b) of the Agreement further states that "[a]ny Service that does not meet the specifications set forth in this Agreement or in any Schedule hereto shall be immediately corrected by [Flashover] (without additional charge), and [FacilitySource] may, at its sole discretion, deduct up to the full amount due to [Flashover] for any Service that [Flashover] does not correct." (*Id.* § 1(b).)

15. Section 2 of the Agreement states that "[t]he Parties hereby agree that Arizona law governs the foregoing payment terms and, therefore, the payment terms shall operate as a 'Pay-If-Paid' provision . . . In the event that [FacilitySource] does not receive all or part of the payment from [FacilitySource's] customer(s) in respect to [Flashover's] Services, whether because of a claimed defect or deficiency in [Flashover's] Services, or

for any other reason, [FacilitySource] shall not be liable to Provider for any sums in respect hereto. For those Services not performed in the foregoing jurisdictions, the foregoing payment terms shall be considered a 'Pay-When-Paid' provision." (*Id.* § 2.)

16. In Section 5 of the Agreement, Flashover "acknowledges and assumes the risk of non-payment or delay of payment by the customer for any reason." (*Id.* § 5(a).)

17. In Section 9(b) of the agreement, Flashover agreed to "perform the Services required . . . hereunder in accordance with generally accepted professional standards and in the most expeditious, economical, and competent manner consistent with the best interests of [FacilitySource] and [its] customer(s)." (*Id.* § 9(b).)

18. Section 22 of the Agreement states, "This Agreement (or any portion of the Services herein) may not be assigned or subcontracted (in whole or in part) by [Flashover] without FacilitySource's prior written consent." (*Id.* § 22.)

19. The Agreement is governed by the laws of the State of Arizona. (*Id.* § 20.)

20. Section 26(j) of the Agreement states that the prevailing Party in any lawsuit to enforce, defend, or interpret the Agreement shall recover all reasonable costs and expenses incurred in bringing such action. (*Id.* § 26(j).)

## B. Flashover's Breaches of the Agreement

21. Flashover has breached the Agreement in several ways.

22. Upon information and belief, Flashover committed to servicing more sites than it could realistically handle.

23. As a result, Flashover improperly subcontracted its services to other service providers, in violation of Section 22 of the Agreement.

24. Flashover did not seek FacilitySource's prior written consent to subcontract, and FacilitySource did not provide prior written consent.

25. FacilitySource became aware of Flashover's improper subcontracting when incumbent service providers reached out to FacilitySource to ask why they were being subcontracted to work through Flashover, instead of working directly for FacilitySource. Specifically, incumbent service provider JDK Services, which previously contracted directly with FacilitySource, reached out to FacilitySource and confirmed it was being subcontracted through Flashover to perform services for FacilitySource's clients.

26. Another incumbent, Winter Services, LLC has brought a lawsuit against Flashover in the Court of Common Pleas for Richland County, Ohio, due to Flashover's failure to pay Winter Services for the work Flashover subcontracted it to do for FacilitySource's clients.

27. Flashover was awarded the Service Provider Agreement on the premise that it would self-perform the work. Flashover failed to fulfill that promise.

28. FacilitySource raised Flashover's improper subcontracting with Flashover on various calls. However, Flashover did not stop subcontracting.

29. Indeed, FacilitySource was terminating Flashover's services for certain sites month after month, placing Flashover on notice of its deficient work and improper conduct.

30. In addition, Flashover's services were not "of first class professional and technical quality" or provided "in accordance with generally accepted professional standards and in the most expeditious, economical, and competent manner consistent with the best interests of [FacilitySource] and [its] customer(s)."

31. Instead, Flashover took advantage of several sites by providing, and charging for, duplicative, unnecessary, and frivolous services.

32. This over-billing occurred at least at three Whirlpool manufacturing facilities located in Findlay, Ohio; Clyde, Ohio; and Marion, Ohio, but may have occurred at other sites as well.

33. Flashover's over-billing was not "the most expeditious, economical, or competent" manner of services and was not in FacilitySource's or its customers' best interests.

34. Flashover invoiced FacilitySource approximately $1.6 million in snow removal services at the Findlay, Clyde, and Marion, Ohio locations in approximately three months' time, from November 2023 to January 2024.

35. Flashover charged these excessive fees when the snow accumulation for Findlay, Clyde, and Marion, Ohio, were normal or below normal for the 2023 to 2024 snow season.

36. Indeed, Flashover charged FacilitySource for double or triple full saltings when little precipitation had fallen and temperatures were above freezing.

37. Flashover charged FacilitySource double for full plowings of 0.2 inches of snow.

38. Flashover also charged FacilitySource for full parking lot saltings on back-to-back days when the temperatures were above freezing.

39. The services that Flashover provided were unsatisfactory.

40. For example, although Flashover was supposed to clear the snow and ice from the three Whirlpool manufacturing facilities located in Findlay, Clyde, and Marion, Ohio, at least two of those sites experienced a slip-and-fall incident due to poor snow and ice removal in the 2023 to 2024 snow season.

41. Instead of uploading pictures of its services each time services were performed, as Flashover was required to do under the Agreement, Flashover uploaded the exact same photos of its alleged services multiple times to show it had completed multiple days of work when it had not.

42. Some of FacilitySource's clients reported that they were not receiving any services from Flashover at all.

43. Because of these issues, FacilitySource's clients refused to pay FacilitySource for the faulty and failed services, which harmed FacilitySource.

44. Because of the overbilling, performance, and subcontracting issues, FacilitySource terminated Flashover's services at the Findlay, Clyde, and Marion, Ohio Whirlpool manufacturing facilities in February 2024 and terminated FacilitySource at other sites as well.

45. In addition, upon information and belief, FacilitySource learned that one of its employees, Brian Knowlton ("Knowlton"), was also an owner of Flashover.

46. Upon information and belief, Knowlton, through his role as Senior Procurement Manager, awarded a disproportionate amount of business to Flashover instead of competitively bidding that business out to secure the best price for FacilitySource and its customers.

47. Upon information and belief, Knowlton sent himself confidential and proprietary CBRE information, such as pricing information and vendor lists, from his CBRE email address to his personal email address.

48. Upon information and belief, Knowlton was also working for Davaco, a competitor of CBRE, at the same time that he worked for FacilitySource.

## V. Count One – Breach of Contract

49. FacilitySource incorporates the allegations of paragraphs 1 through 48 of the Counterclaim as if fully restated here.

50. The Agreement is a valid contract between FacilitySource and Flashover.

51. FacilitySource performed its obligations under the Agreement by making payments to Flashover in accordance with the terms of the Agreement.

52. Flashover failed to perform its obligations under the Agreement by:

a. Improperly subcontracting the Services;

b. Failing to perform satisfactory Services; and

c. Failing to perform the Services in accordance with generally accepted professional standards and in the most expeditious, economical, and competent manner consistent with the best interests of FacilitySource and its customer(s).

53. Flashover's breaches of the Agreement were material.

54. As a result of Flashover's breaches, FacilitySource has been damaged in an amount to be determined at trial, including a) any invoices charged to or paid by FacilitySource to Flashover for Services Flashover had improperly subcontracted, b) any invoices charged to or paid by FacilitySource for Services that were not performed in accordance with generally accepted professional standards or in the most expeditious, economical, and competent manner consistent with FacilitySource's and its customers' best interests, c) any invoices charged to or paid by FacilitySource for Services that were not satisfactory, and d) any profits that FacilitySource lost by having to compensate its customers for the unsatisfactory or unnecessary work that Flashover performed.

55. FacilitySource has also been forced to incur legal fees and costs, which are recoverable under Section 26(j) of the Agreement.

**WHEREFORE,** FacilitySource prays for judgment or entry of an order:

A. Awarding FacilitySource compensatory damages, in an amount to be determined at trial;

B. Awarding FacilitySource consequential damages, in an amount to be determined at trial;

C. Awarding FacilitySource its reasonable costs and attorneys' fees;

D. Awarding FacilitySource such other relief as the Court deems just, equitable, and proper.

Respectfully submitted,

*/s/Robert J. Tucker*
Robert J. Tucker (0082205)
Graycen W. Hill (0102160)
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
Email: rtucker@bakerlaw.com
Email: ghill@bakerlaw.com

*Counsel for Defendants CBRE, Inc., CBRE Group, Inc., and FacilitySource, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/Robert J. Tucker*
Robert J. Tucker (0082205)