**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FLASHOVER MAINTENANCE LLC, | ) | CASE NO. 1:26-CV-01850-DAR |
| Plaintiff, | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| vs. | ) | |
| CBRE, INC., *et. al*, | ) | |
| Defendants. | ) | |

**DEFENDANT FACILITYSOURCE, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF FLASHOVER MAINTENANCE LLC'S MOTION TO DISMISS**

## I. Introduction

Flashover Maintenance LLC's ("Flashover") Motion to Dismiss ("Motion") asserts that FacilitySource, LLC ("FacilitySource") did not "prove any damages" in its Counterclaim, and, therefore, it must be dismissed. (Mot. at 3, ECF No. 7.) But FacilitySource need not "prove" its Counterclaim at the pleadings stage. Flashover sidesteps the relevant standard and ignores that FacilitySource only needs to plead sufficient facts to allow the Court to plausibly infer that it was damaged; it does not need to prove its damages or plead any specific dollar amount. FacilitySource's Counterclaim easily meets that basic pleading requirement. FacilitySource pled that Flashover, through its unauthorized subcontracting of its exterior maintenance services, its overbilling, and its sub-par performance, damaged FacilitySource, and even pled specific ways in which FacilitySource was damaged by such breaches. The Counterclaim fairly puts Flashover on notice of the claims against it and satisfies the basic pleading requirements of Rule 8.

Flashover's contention that anything more is required is wrong. Flashover's Motion should be denied.

## II. Factual Background

FacilitySource and Flashover entered into a Service Provider Agreement ("Agreement") on February 26, 2018, where Flashover agreed to provide facility maintenance and repair services to FacilitySource's customers. (Countercl. ¶¶ 10-11, ECF No. 5.) Under the terms of the Agreement, Flashover agreed that its services would be performed to the reasonable satisfaction of FacilitySource's customers, and that Flashover's services would "be of first class professional and technical quality, consistent with generally accepted standards of the applicable industry and suitable for use as contemplated by" FacilitySource. (Agreement §§1(a)(ii) and (iv), ECF No. 5-1.) Flashover also agreed to perform its services "in accordance with generally accepted professional standards and in the most expeditious, economical, and competent manner consistent with the best interests of [FacilitySource] and [its] customer(s)." (*Id.* at § 9(b).) Finally, Flashover agreed that it would not subcontract any portion of its services without FacilitySource's prior written consent. (*Id.* at § 22.)

During the 2023-2024 snow season, problems with Flashover's services arose. FacilitySource learned that Flashover had subcontracted its services without FacilitySource's consent. (Countercl. ¶¶ 23-27.) In addition, Flashover's services were sub-par. Flashover overbilled several sites, including three Whirlpool manufacturing facilities, racking up a bill of approximately $1.6 million in snow removal services for just three months of work. (*Id.* at ¶¶ 30-34.) For example, Flashover charged for double or triple full saltings when little precipitation had fallen or when temperatures were above freezing and for double plowings for 0.2 inches of snow. (*Id.* at ¶¶ 37-38.) FacilitySource's

customers also complained about the quality of Flashover's work. At least two sites experienced a slip-and-fall incident due to poor snow and ice removal during the 2023-2024 snow season. (*Id.* at ¶ 40.) Some of FacilitySource's clients even reported that they were not receiving any services at all from Flashover. (*Id.* at ¶ 42.) Because of these issues, FacilitySource's clients refused to pay FacilitySource, in whole or in part, for Flashover's poor performance. (*Id.* at ¶ 43.) FacilitySource eventually terminated Flashover from various sites. (*Id.* at ¶ 44.) As a result, FacilitySource alleges that it:

> has been damaged in an amount to be determined at trial, including a) any invoices charged to or paid by FacilitySource to Flashover for Services Flashover had improperly subcontracted, b) any invoices charged to or paid by FacilitySource for Services that were not performed in accordance with generally accepted professional standards or in the most expeditious, economical, and competent manner consistent with FacilitySource's and its customers' best interests, c) any invoices charged to or paid by FacilitySource for Services that were not satisfactory, and d) any profits that FacilitySource lost by having to compensate its customers for the unsatisfactory or unnecessary work that Flashover performed.

(*Id.* ¶ 54.)

The parties have brought dueling breach of contract claims. Pursuant to the Agreement, this dispute is governed by Arizona law. (Agreement § 20.) For the reasons explained below, FacilitySource's Counterclaim for breach of contract is adequately pled.

## III. Legal Standard

"[A] Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter*, 377 F.3d 59, 602 (6th Cir. 2004)). Proof is not necessary; the allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Facial

plausibility exists where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Rule 8 simply requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (alteration in original) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## IV. Argument

FacilitySource has adequately pled facts to support its claim for breach of contract and specifically its claim for lost profits, which under Arizona law, may be direct and/or special damages. Either way, FacilitySource has satisfied the relevant pleading standards.

### A. FacilitySource's Counterclaim Adequately Pleads Damages for Breach of Contract.

According to Flashover, FacilitySource cannot prove its damages, so its claim must fail at the pleading stage. Not so. FacilitySource has adequately pled facts related to Flashover's overbilling, sub-par services, and unauthorized subcontracting of its services that create a plausible inference of damages. FacilitySource need not plead the specificity of those damages, including any specific amount, at this time.

A party claiming breach of contract must only "provide[] a 'short and plain' statement of each element of a breach of contracts claim, and then 'directly allege[] damages as a result of [the] breach.'" *Total Quality Logistics, LLC v. EDA Logistics*, No. 1:21-cv-164, 2021 U.S. Dist. LEXIS 92843, at *13 (S.D. Ohio May 17, 2021) (quoting *Bridgestone Am.'s, Inc. v. IBM*, 172 F. Supp. 3d 1007, 1022 (M.D. Tenn. Mar. 22, 2016)). "[T]here is no requirement under federal law to plead any particular or specific amount of damages." *Id.* at *13-14. In *Total Quality Logistics*, the court found that allegations that

the defendant was competing with the plaintiff for business created "a plausible inference" of damages. *Id.* at *14.

According to the *Total Quality Logistics* court, "discovery, not a motion to dismiss, is the proper avenue to address any missing specifics about the existence, and amount, of any such damages." *Id.* at *14 (denying defendants' motion to dismiss a breach of contract claim); *see also Prof'l Investigating & Consulting Agency v. SOS Sec.*, LLC, No. 2:19-cv-03304, 2020 U.S. Dist. LEXIS 5919, at *14-15 (S.D. Ohio Jan. 14, 2020) (denying a motion to dismiss a breach of contract claim even where the plaintiff did not specify the extent of its alleged damages); *McCoy v. RFS Charitable Found.*, No. 3:22-cv-00807, 2023 U.S. Dist. LEXIS 17918, at *8 (N.D. Ohio Feb. 2, 2023) (noting even though the "counterclaim is light on details regarding the significance and extent of damages . . . [claimant] need not flesh out those issues to meet its initial pleading burden."). Therefore, all that is required is "that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp. v. Canadian Stds. Assoc.*, No. 1:17 CV 1127, 2018 U.S. Dist. LEXIS 105907, at *9 (N.D. Ohio June 25, 2018).

Here, FacilitySource has pled sufficient facts to create a plausible inference of damages from Flashover's breaches of the Agreement. FacilitySource alleges Flashover overbilled it for unnecessary services (Countercl. ¶¶ 31-38), and Flashover provided sub-par services or didn't service some clients at all (*id.* ¶¶ 39-42), both of which are breaches of the Agreement. Because of this, FacilitySource alleges that FacilitySource's clients refused to pay it for these faulty and failed services, *which harmed FacilitySource*. (*Id.* at ¶ 43, emphasis added.) These facts create at least a plausible inference of damages. *See Total Quality Logistics,* 2021 U.S. Dist. LEXIS 92843, at *14.

While providing no legal support for its argument that FacilitySource's claim is not sufficiently pled, Flashover's issue with the Counterclaim is one of semantics.[1] Flashover argues that because FacilitySource admitted in its Answer that "it has not paid certain invoices submitted by Flashover in whole or in part," the Counterclaim's use of the disjunctive "charged to *or* paid by" in Paragraph 54(a)-(c) necessarily seeks an impermissible double recovery—*i.e.*, a refund of invoices FacilitySource never paid. (Mot. at 2, 4.) That argument reads far more into the word "or" than the pleading will bear. At the motion to dismiss stage, the Counterclaim's allegations must be construed in the light most favorable to FacilitySource, and a disjunctive phrase covering two overlapping categories of harm—amounts actually paid for deficient services, and amounts invoiced which contributed to FacilitySource's own customers' non-payment—is not an admission that FacilitySource seeks a "refund" on invoices it never paid. Rather, the "charged to" language reflects the separate, lost-profit harm already pled in Paragraph 43: FacilitySource's customers withheld payment, in whole or in part, from FacilitySource because of Flashover's deficient performance, regardless of whether FacilitySource had yet remitted payment to Flashover on the corresponding invoice. Which invoices were actually paid, which were not, and the precise measure of damages attributable to each category are matters for discovery, not a basis to dismiss the claim at the pleading stage. *See Total Quality Logistics*, 2021 U.S. Dist. LEXIS 92843, at *14.

[1] Flashover also erroneously cites to Ohio contract law, when the Agreement is clearly governed by Arizona law. (Agreement § 20, ECF No. 5-1); *see Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013) (stating the elements of breach of contract in Arizona are 1) the existence of the contract, 2) breach, and 3) resulting damages).

Indeed, Flashover acknowledges that "FacilitySource could plausibly have a valid claim for reimbursement of fees which were not earned pursuant to the contract." (Mot. at 4.) That is precisely what FacilitySource pled in its Counterclaim—that Flashover is not entitled to be paid for sub-par services or overbilled services. By pleading that Flashover overbilled FacilitySource and that FacilitySource paid Flashover under the terms of the Agreement, it is plausibly inferred—and directly pled—that FacilitySource overpaid Flashover for services that were either not performed or not adequately performed, resulting in damages. (*Compare* Mot. at 4 *with* Countercl. ¶¶ 31-38, 51, 54.)

FacilitySource also alleges that Flashover improperly subcontracted its services, in violation of the Agreement. (*Id.* ¶¶ 23-26.) Flashover contends that "the Agreement does not require Flashover to hand back what it was paid for services performed because they were subcontracted." (Mot. at 4.) Yet, it remains to be decided whether Flashover's unauthorized subcontracting was a material breach of the Agreement. *See Auger v. Rods*, No. 2023-008711, 2025 Ariz. Super. LEXIS 1500, at *17 (Ariz. Super. Ct. Oct. 29, 2025) (describing a material breach under Arizona law). For now, the relevant inquiry into the sufficiency of FacilitySource's pleading is determined by the facts contained in the Counterclaim, which create a plausible inference that Flashover's unauthorized subcontracting harmed FacilitySource, including, because perhaps the subcontractors were inadequately performing the services when stepping in for Flashover in breach of the Agreement. (Countercl. ¶¶ 23-29, 43.)

Flashover separately suggests that FacilitySource's only remedy for unauthorized subcontracting was termination under Section 7(b) of the Agreement and that FacilitySource cannot "accept the services, invoice its own customers for them, not pay Flashover . . . , and then recover the invoice price." (Mot. at 4.) But nothing in Section

7(b)—or anywhere else in the Agreement—states that termination is FacilitySource's sole or exclusive remedy for a breach of Section 22's subcontracting prohibition. Under Arizona law, a contractual remedy is not presumed exclusive absent clear language to that effect, and the availability of a termination right does not extinguish a non-breaching party's separate right to recover damages flowing from the breach. *See Zancanaro v. Cross*, 85 Ariz. 394, 399 (Ariz. 1959) (explaining that the parties' intent to create exclusive remedies in a contract must be clear). In any event, Flashover's characterization again assumes facts not alleged: the Counterclaim does not allege that FacilitySource withheld payment from Flashover for subcontracted work and also recovered the same amount from its customers; it alleges that Flashover or its subcontractors performed inadequately, consistent with the broader pattern of sub-par service alleged throughout the Counterclaim, causing the very damages described in Paragraphs 43 and 54.

Flashover's reading of Section 1(b) of the Agreement is also too narrow. (Mot. at 6.) Section 1(b) grants FacilitySource a self-help deduction remedy—the ability to withhold or offset amounts otherwise owed to Flashover for uncorrected, unsatisfactory work. It contains no language making that deduction right FacilitySource's "sole," "exclusive," or "in lieu of" remedy for Flashover's breaches, nor does it state that it displaces FacilitySource's common-law right to recover damages for breach of the Agreement. Arizona courts do not read a limitation of liability into a contract absent clear and unambiguous language to that effect. *See Zancanaro,* 85 Ariz. at 399. FacilitySource's damages theory does not depend on the deduction mechanism in Section 1(b) at all; it rests on the independent harm alleged in Paragraphs 43 and 54—that FacilitySource's own customers withheld payment because of Flashover's deficient performance—which is a direct and natural consequence of the breach.

### B. FacilitySource's Counterclaim Also Adequately Pleads a Claim for Potential Lost Profits.

Flashover contends that FacilitySource's Counterclaim fails, in part, under Fed. R. Civ. P. 9(g), because it fails to specifically state a claim for special damages. (Mot. at 5.) Again, not so. First, under Arizona law, lost profits are not automatically deemed "special damages" in a breach of contract claim. Rather, expected profits from a breached bargain can be direct damages. *See Drew v. United Producers & Consumers Coop.*, 161 Ariz. 331, 333 (Ariz. 1989) ("Because economic damages in the form of lost profits usually are the 'direct and natural result of a breach of contract,' the lost profits need not have been specifically pleaded in this breach of contract complaint.")[2] In *Drew*, the court found lost profits to be direct damages where the plaintiff was not able to make a profit on goods that he was selling. *See id.* at 333-334. That is exactly what FacilitySource alleges here—that it could not profit from the services it provided to its customers because of Flashover's breaches. (Countercl. ¶¶ 43, 54.) In this instance, lost profits are not deemed special damages, and any further pleading requirements of Rule 9(g) do not apply.

Alternatively, even assuming that FacilitySource's claim for lost profits is a claim for special damages, FacilitySource's Counterclaim adequately pleads them as such. Another Court within this district has stated that a claimant satisfies Rule 9(g)'s requirement to plead special damages by pleading that the claimant "has incurred significant other damages, including loss of business [and] enterprise value loss" as a result of the defendant's conduct. *Vexes, Inc. v. Ravin Elecs.*, No. 1:19-CV-1529, 2021 U.S. Dist. LEXIS 202539, at *9 (N.D. Ohio Mar. 17, 2021). "Rule 9(g) does not require that the

[2] Flashover also wrongly applies Ohio case law in support of this argument, when the Provider Agreement contains a choice of law provision requiring application of Arizona law. (Agreement § 20, ECF No. 5-1.)

amount of special damages be pleaded, but only that the kind of special damages be specified." *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-CV-45-TBR, 2015 U.S. Dist. LEXIS 94372, at *16 (W.D. Ky. July 21, 2015) (quoting *United Ins. Co. v. B. W. Rudy, Inc.*, 42 F.R.D. 398, 405 (E.D. Pa. 1967)); *see also Vexes*, 2021 U.S. Dist. LEXIS 202539, at *8-9 (quoting OHIO JURISPRUDENCE § 307 (3d ed. 2021)); *S. Ariz. Sch. for Boys, Inc. v. Chery*, 119 Ariz. 277, 281 (Ariz. Ct. App. 1978) ("[A]n allegation of special damages is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with 'as great precision as might be possible or desirable.'" (quoting *Cont'l Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397 (7th Cir. 1965))). The *Time Warner* court found that an allegation of "lost customers and lost profits" satisfied this pleading standard. 2015 U.S. Dist. LEXIS 94372, at *17. So, too then, does the pleading here alleging lost profits from Flashover's breaches.

Flashover's argument that lost profits are not foreseeable must also fail. (*See* Mot. at 7.) It is plausibly inferred that if FacilitySource's customers did not pay FacilitySource for Flashover's poor services, then FacilitySource lost the opportunity to earn profits from those services. (Countercl. ¶ 43.) And Flashover's conduct might very well harm FacilitySource's relationship with its customers and its ability to earn future profits. *See McAlister v. Loeb & Loeb, LLP*, 571 P.3d 891, 897 (Ariz. 2025) (explaining a plaintiff may recover future lost profits arising from a breach).

Flashover also cites to *Sherman R. Smoot Co. v. Ohio Dep't of Adm. Servs.*, for the proposition that recovery of damages tied to a separate contract requires a showing that, at the time of contracting, Flashover had reason to foresee that its breach could cause FacilitySource to suffer damages under FacilitySource's unrelated agreements with its own customers. (Mot. at 7.) As an initial matter, *Smoot* is an Ohio Court of Appeals

decision, and the Agreement's choice-of-law provision requires application of Arizona law to this dispute. (Agreement § 20.) As previously explained, lost profits can be direct damages under Arizona law, so Flashover's foreseeability argument is moot. Even so, Flashover knew, by the nature of the Agreement itself, that its services were being performed for the benefit of FacilitySource's customers and that deficient performance could jeopardize FacilitySource's relationships with, and ability to collect payment from, those customers. Such damages were foreseeable.

## V. Conclusion

Based on the foregoing, FacilitySource has adequately pled its Counterclaim for breach of contract. Flashover's Motion should be denied.

Respectfully submitted,

*/s/Robert J. Tucker*
Robert J. Tucker (0082205)
Graycen W. Hill (0102160)
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
Email: rtucker@bakerlaw.com
Email: ghill@bakerlaw.com

*Counsel for Defendants CBRE, Inc., CBRE Group, Inc., and FacilitySource, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/Robert J. Tucker*
Robert J. Tucker (0082205)

**LOCAL RUL 7.1(F) CERTIFICATION**

The undersigned certifies that this case is unassigned to a track, and this memorandum adheres to the 20-page limitation set forth in Local Rule 7.1.

*/s/Robert J. Tucker*
Robert J. Tucker (0082205)