IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Flashover Maintenance LLC,<br>*Plaintiff/Counterclaim-Defendant,*<br>v.<br>CBRE, Inc., et al.,<br>*Defendants.* | Case No.: 1:26-cv-01850-DAR<br><br>Judge David A. Ruiz<br><br>Magistrate Judge Reuben J. Sheperd |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT FLASHOVER MAINTENANCE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COUNTERCLAIM OF FACILITYSOURCE, LLC**

## I. Introduction

FacilitySource's Counterclaim identified four categories of damages, all in Counterclaim Paragraphs 54(a-d). (Doc. 5, PageID # 146.)[1] With respect to Paragraphs 54(a-c), FacilitySource's opposition relies on unpled hypotheticals to argue that the counterclaim is sufficient under the incorrect, pre-*Twombly* formulation for weighing the sufficiency of a Complaint. For example, FacilitySource argues that FacilitySource overpaid Flashover and that the subcontractors "perhaps" performed badly. (Doc. 11, PageID # 202-03.) None of those allegations are actually pled in the Counterclaim.

FacilitySource does not defend the argument that 54(d) fails to state a claim, instead arguing that it is saved by a separate paragraph, describing a different loss, and which fails both

[1] FacilitySource alleges damages "including" "any invoices charged to or paid by" or "any profits that FacilitySource lost by having to compensate its customers" without ever affirmatively committing to the existence of such damages.

under Rule 9(g) and because the facts it pleads do not support lost profits. The counterclaim should be dismissed.

## II. Law and Argument

### A. FacilitySource Does Not Plead That It Paid for Any Deficient Service (Paragraphs 54(a-c))

For each of the purported damages in Paragraphs 54(a-c), FacilitySource pleads that it was damaged by "invoices charged to **or** paid by FacilitySource." The opposition opens with the "no set of facts" formulation (Doc. 11, PageID # 199), which the Supreme Court retired in 2007. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). It then applies this retired formulation by attempting to speculate about unpled fact patterns which could be consistent with a claim. Examples include the allegation that FacilitySource "overpaid Flashover" (Doc. 11, PageID # 203), that "perhaps" Flashover's subcontractors "were inadequately performing" (*id.*), and that Flashover's conduct "might very well harm FacilitySource's relationship with its customers and its ability to earn future profits." (*Id.*, PageID # 206.)

The question in this matter is not whether FacilitySource can invent a hypothetical set of facts which are consistent with the Counterclaim which could justify relief. A complaint that pleads facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). A counterclaimant "cannot correct its pleading errors in an opposition brief." Travelers *Cas. & Sur. Co. of Am. v. Perk Co.*, N.D. Ohio No. 1:21CV1940, 2025 WL 987695, *3 (Apr. 2, 2025). The question is whether the Counterclaim allegations state a claim as written.

The four corners of the counterclaim seek damages for "any invoices charged to **or** paid by FacilitySource" (Doc. 5, PageID # 146, Countercl. ¶ 54(a)-(c)) (emphasis added), an allegation that is true even if FacilitySource never paid Flashover anything. While this allegation is "consistent" with FacilitySource paying such invoices and thereby incurring damages, *Iqbal* makes clear that a pleading merely consistent with a claim is insufficient. At no point does FacilitySource plead that it paid such invoices, nor does it identify any damages associated with merely receiving an invoice which it did not pay. The use of the disjunctive "or" therefore makes any damages derived from such hypothetical and unpled facts "merely consistent with" defendant's liability as opposed to clearly stating facts which would, if proven, demonstrate liability.

The only invoices which FacilitySource alleges it paid were the invoices paid "in accordance with the terms of the Agreement." (Doc. 5, PageID # 146, Countercl. ¶ 51.) Paying an inflated or improper invoice is not a payment "in accordance with the terms of the Agreement," and a payment that was "in accordance with the terms of the Agreement" is not an overpayment and not a damage. No paragraph alleges that FacilitySource actually paid any of the charges described in Paragraphs 34 through 38, nor any other invoice which FacilitySource now claims is the source of any of its damages.

FacilitySource correctly cites to *Duro* for the proposition that "the standards articulated in *Twombly* and *Iqbal* require that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp. v. Canadian Standards Assn.*, N.D. Ohio No. 1:17 CV 1127, 2018 WL 3118275, *4 (June 25, 2018). The Court in *Duro* then applied that standard to dismiss count one of the counterclaim with prejudice, in part because "[t]he only

reference to damages arising from this claim is a generalized statement." *Id*. FacilitySource's Counterclaim suffers from the same defect and should face the same result.

### B. FacilitySource Does Not Plead Lost Profits (Paragraphs 54(d) and 43)

#### 1. FacilitySource does not plead that it compensated its customers.

In the whole of the Counterclaim, FacilitySource identifies potential lost profit in exactly one place: Paragraph 54(d), which claims damages for "any profits… lost by having to compensate its customers." (Doc. 5, PageID # 146, Countercl. ¶ 54(d).) However, Paragraph 54(d) stops short of alleging that FacilitySource ever actually compensated a customer, and no other paragraph of the Counterclaim does either. Paragraph 54(d) only names a category of damages, stating that if such compensation occurred, it would be entitled to "any" of those damages. Like the "charged to or paid by" allegations in Paragraphs 54(a)-(c), a claim for "any" such profits is merely consistent with FacilitySource having compensated a customer; it does not allege that FacilitySource did. Accordingly, FacilitySource has failed to state a claim for any lost profits derived from "having to compensate its customers."

#### 2. FacilitySource never alleges that its customers' refusal to pay for the work performed by Flashover resulted in lost profits or that such lost profits were foreseeable.

To recover profits lost on its contracts with its customers, "the plaintiff must show that, at the time of entering into the primary contract, the defendant had reason to foresee that a breach of the primary contract could cause the plaintiff to suffer damages on a second unrelated

contract." *Sherman R. Smoot Co. v. Ohio Dept. of Adm. Servs.*, 136 Ohio App.3d 166, 182-83, 736 N.E.2d 69 (10th Dist. 2000).[2]

FacilitySource does not attempt to argue that compensating customers (Counterclaim Paragraph 54(d)) is a foreseeable expectation of the alleged breaches. The opposition also never argues that the Counterclaim pleads facts supporting the damages in Paragraph 54(d). It offers Paragraph 43 as its factual allegation of lost profits (Doc. 11, PageID # 205-06), but Paragraph 43 alleges that customers refused to pay FacilitySource, not that FacilitySource compensated them. Nor does Paragraph 43 allege that FacilitySource was entitled to those payments, that it lost a profit, or that any loss was foreseeable when it contracted with Flashover.

Paragraph 43 alleges only revenue FacilitySource did not receive: customers that "refused to pay FacilitySource." Revenue is not profit and is not a compensable type of damages. To recover lost profits, a party "must show not only '(a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom).'" *Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St.3d 36, 40, 540 N.E.2d 1358 (1989) (quoting *Allen, Heaton & McDonald, Inc. v. Castle Farm*

[2] Ohio law governs. R.C. 4113.62(D)(1) voids any provision making a construction contract "for an improvement, or portion thereof, to real estate in this state" subject to the laws of another state, and FacilitySource admits that "over $1 million of the amount Flashover claims is unpaid is for alleged services performed at sites in Ohio." (Doc. 5, PageID # 134, Answer ¶ 50.) Nevertheless, the result is the same under Arizona law. Consequential damages are "those damages caused by a breach of contract or warranty that can reasonably be supposed to be within the contemplation of the parties at the time of the contracting." *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 601 (1981). "Absent a showing that the defendant knew of special circumstances which would arise to cause plaintiff special damages in the event of a breach of the contract, the plaintiff is limited to the recovery of the amount due and the legal rate of interest." *All American Sch. Supply Co. v. Slavens*, 125 Ariz. 231, 233, 609 P.2d 46 (1980).

*Amusement Co.*, 151 Ohio St. 522, 526, 86 N.E.2d 782 (1949)).[3] FacilitySource is "engaged in the business of facilities management." (Doc. 1-1, PageID # 7-8, Compl. ¶ 2; Doc. 5, PageID # 122, Answer ¶ 2.) Nothing in the Counterclaim, including the attachment, states how or on what terms FacilitySource's customers pay for its facilities management services, including whether FacilitySource earns any margin on Flashover's work at all, as opposed to a flat management fee, a share of receipts, or any other measure not tied to what Flashover invoiced.

A customer's refusal to pay an invoice can result in lost profits only if FacilitySource would have kept a margin on that payment. The Counterclaim never alleges that it would have, much less that Flashover had reason to know that FacilitySource kept a margin on its work when it contracted. A claim for losses on dealings with third parties that does not allege the breaching party knew or should have known of them when it contracted fails at the pleading stage. *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 970 (N.D. Cal. 2024). "[C]ognizable damages are an element of a breach of contract claim, and either they have been plausibly pled or they have not." *Id*. Here, they have not.

**3. Paragraph 43 does not comply with Fed. R. Civ. P. 9(g).**

Rule 9(g) states that "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). The rule "governs the pleading requirements for consequential damages, which are a form of special damages." *Vexos, Inc. v. Ravin Electronics, LLC*, N.D. Ohio No. 1:19-CV-1529, 2021 WL 4813277, *3 (Mar. 17, 2021). "[D]amages incurred on one contract as the result of the breach of another unrelated contract are… 'special' or

[3] Ohio law governs here, but Arizona also measures lost profit in the same way. A claimant who does not show its costs "gave no basis for determining what his prospective profits would have been." *Zancanaro v. Cross*, 85 Ariz. 394, 401, 339 P.2d 746 (1959) (cited in Doc. 11, PageID # 204).

'consequential' damages," and FacilitySource pleads them as such. *Smoot*, 136 Ohio App.3d at 182; Doc. 5, PageID # 147, Prayer ¶ B (seeking "consequential damages").[4]

In the case cited by FacilitySource, the plaintiff specifically identified lost profits as a category of damages. *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, W.D. Ky. No. 5:15-CV-45-TBR, 2015 WL 4464105, *6 (July 21, 2015) ("Time Warner's allegation of lost customers and lost profits satisfy this pleading standard."). By contrast, FacilitySource never alleges lost profits as a result of customers not paying, and never alleges facts which would be sufficient to draw this conclusion. FacilitySource also correctly cites *McCoy* to argue that the *amount* of damages need not be identified in a pleading; however, that court partially *granted* the motion to dismiss because "*Twombley* [sic] and *Iqbal* require more than RFS's bare statement that it 'suffered damages.'" *McCoy v. RFS Charitable Found.*, N.D. Ohio No. 3:22-cv-00807, 2023 WL 1470401, *6-7 (Feb. 2, 2023).

Paragraph 43 never names the special damage FacilitySource now claims from it. It describes an event, customers that refused to pay, and a conclusion, that FacilitySource was "harmed." But being "harmed" is not a "specifically stated" kind of damage. It is a declaration of injury that does not satisfy Fed. R. Civ. P. 9(g). *Carnell Constr. Corp. v. Danville Redev. &*

---

[4] Ohio law governs here. Nevertheless, Arizona law demands the same outcome. FacilitySource answers that, under Arizona law (citing *Drew v. United Producers & Consumers Coop.*, 161 Ariz. 331 (1989)), its lost profits are direct damages. (Doc. 11, PageID # 205.) *Drew* does not hold that lost profits are always direct; it holds that they *can* be direct if they are the "direct and natural result of a breach of contract." *Drew*, 161 Ariz. at 333 (citing *Myers v. Stephens*, 233 Cal.App.2d 104, 121 (1965)). In other circumstances they are consequential damages. *See, e.g.*, *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 211 (App. 1992) ("Consequential damages include lost future profits."). That specific situation in *Drew* was found to be direct damages because "a feeder pig operation's profitability is based on the number of pigs produced by each sow." *Drew*, 161 Ariz. at 333. Here, it is not "direct and natural" that FacilitySource derived a profit related to these services on contracts with third parties that Flashover has no access to.

*Hous. Auth.*, 745 F.3d 703, 726 (4th Cir. 2014) ("Carnell's declaration that it was injured failed to convey clearly that Carnell sought special damages with respect to those injuries as part of its contract claims."); *see also N. Ave. Cap., LLC v. Ranger Sci. LLC*, S.D.W. Va. No. 2:23-cv-00015, 2024 WL 2227151, *3 (May 16, 2024) (barring lost-profit evidence where a breach-of-contract counterclaim sought only "judgment for damages").

Paragraph 43 is the only paragraph which FacilitySource offers to suggest that it pled lost profits. However, that paragraph fails to comply with Rule 9(g), pleads lost revenue and not lost profits, and does not plead foreseeability of that type of "harm." Accordingly, this allegation should be dismissed.

**C. A breach that costs FacilitySource nothing does not entitle it to keep both the services and the price.**

The opposition argues that termination under Section 7(b) and the deduction in Section 1(b) are not FacilitySource's exclusive remedies. (Doc. 11, PageID # 203-04.) The point is more basic: in a breach of contract claim, a party can only recover the damages or loss resulting from the breach. Where FacilitySource received the services, as it concedes it did for the subcontracted work in Paragraph 54(a), recovering the invoice price as well would (to the extent it was ever paid in the first place) leave FacilitySource better off than if Flashover had performed perfectly, receiving the labor for contracted work while retaining the contract price. That is not a loss resulting from the breach, it is an impermissible double recovery, and another example of FacilitySource announcing damages as a conclusion without alleging facts which would suggest they are entitled to them.

## III. CONCLUSION

The counterclaim pleads that FacilitySource paid what the Agreement required. It never alleges that FacilitySource paid the invoices it disputes, and it does not plead facts showing any recoverable loss. Flashover respectfully requests that the Court dismiss the counterclaim.

Respectfully submitted,

*/s/ Alex F. Freitag*

Alex F. Freitag (0089336)
Speech Law, LLC
4403 Saint Clair Ave., Suite 400
Cleveland, OH 44103-1125
513-549-5517 Phone
216-912-2195 Fax
alex.freitag@speech.law
Attorney for Plaintiff/Counterclaim-Defendant Flashover Maintenance LLC

## CERTIFICATION UNDER LOCAL RULE 7.1(F)

The undersigned certifies that this case has not been assigned to a track under Local Rules 16.1 through 16.3. Under Local Rule 7.1(f), a memorandum relating to a dispositive motion in an unassigned case may not exceed twenty pages, and the undersigned certifies that this memorandum adheres to that limitation. The page limitations have not been modified by order of the Court.

*/s/ Alex F. Freitag*
Alex F. Freitag (0089336)
Attorney for Plaintiff/Counterclaim-Defendant Flashover Maintenance LLC

## CERTIFICATE OF SERVICE

I certify that on November 4, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*/s/ Alex F. Freitag*
Alex F. Freitag (0089336)
Attorney for Plaintiff/Counterclaim-Defendant Flashover Maintenance LLC